STATE vs. HATTIE REESE, *alias* HATTIE HARMON, *alias* HATTIE CURRY.

1. JURY—COMPETENCY—CHALLENGE FOR CAUSE—GROUNDS.

That a juror was a member of the coroner's jury, which had heard evidence and held accused for murder, was not a sufficient ground for challenge for cause.

2. HOMICIDE—SELF-DEFENSE—EVIDENCE—PREVIOUS QUARRELS, THREATS AND ASSAULTS.

In order to render admissible evidence as to previous quarrels, threats,

and assaults, as between deceased and accused, where self-defense is relied on in a homicide case, it must appear that deceased indicated, by act or demonstration at the time of the killing, a real or apparent intention to kill or inflict great bodily harm upon accused, and thereby induced the latter to reasonably believe that it was necessary to kill to save himself; and hence, where accused had forgiven deceased, her husband, for all beatings he had inflicted on her prior to the night of the killing, and they had continued to live together as man and wife, evidence of the quarrels, threats, and assaults of deceased previous to the time when they separated on such night was inadmissible.

3. HOMICIDE—SELF-DEFENSE—EVIDENCE—PREVIOUS ASSAULTS—THREATS.

In a murder trial, testimony of accused that deceased, her husband, on leaving her some thirty minutes before the shooting, had a razor in his hand and threatened to kill her, was admissible in connection with testimony of accused that, when she met defendant, he threw his hand back and stepped toward her, and she feared he would cut her with the razor.

4. INDICTMENT AND INFORMATION—MURDER—LOWER DEGREES OF OFFENSE.

Under the statute, one indicted for murder may be found guilty of either degree of murder or of manslaughter.

5. HOMICIDE—DEFINITION.

"Homicide" is the killing of one human being by another.

6. HOMICIDE—"FELONIOUS HOMICIDE".

"Felonious homicide" is of three kinds: Murder of the first degree, murder of the second degree, and manslaughter.

7. HOMICIDE—MURDER—ELEMENTS—MALICE.

Malice is an essential element of murder of both degrees.

8. HOMICIDE—"MALICE".

"Malice" is a condition of the mind or heart, and as an ingredient of the crime of murder is not restricted to spite or malevolence toward the person slain, but also includes that general malignity and reckless disregard of human life which proceed from a heart void of a just sense of social duty and fatally bent on mischief.

9. HOMICIDE—MALICE—PRESUMPTIONS—BURDEN OF PROOF.

Whenever a homicide is committed deliberately or without adequate cause, the law presumes that it was done with malice, and the burden is on accused to show from the evidence, or by inference from the circumstances of the case, that it was not so done.

10. HOMICIDE—"MURDER IN THE FIRST DEGREE".

"Murder in the first degree" occurs where the killing was done with express malice aforethought, or in perpetrating or attempting to perpetrate a crime punishable with death.

11. HOMICIDE—"EXPRESS MALICE AFORETHOUGHT".

"Express malice aforethought" is where one person kills another with a sedate, deliberate mind and formed design, which design or purpose may be shown from the circumstances attending the act, such as the deliberate selection and use of a deadly weapon, knowing it to be such, stealthily lying in wait, preconcerted plans, or the previous procurement or preparation of instruments, contrivances, or other means for slaying the victim.

12. HOMICIDE—"MURDER OF THE SECOND DEGREE".

"Murder of the second degree" occurs where the killing is done with implied malice; that is, where there is no deliberate mind or formed design to take life, but where the killing was done without justification or excuse, or without provocation to reduce the offense to manslaughter.

13. HOMICIDE—MALICE—PRESUMPTIONS.

A killing done with a deadly weapon is presumed to have been done maliciously.

14. HOMICIDE—"MANSLAUGHTER".

"Manslaughter" occurs where one unlawfully kills another without malice.

15. HOMICIDE—SELF-DEFENSE—GROUNDS—SLIGHT ASSAULT.

A slight assault will not excuse the killing of the assailant with a deadly weapon.

16. HOMICIDE—SELF-DEFENSE—BURDEN OF PROOF.

The burden of establishing self-defense is on accused.

17. HOMICIDE—SELF-DEFENSE—ASSAULTS—REPELLING ASSAULTS.

In repelling an assault no more force may be used than is necessary for the purpose, and if a person assailed uses greater force he becomes the aggressor.

18. HOMICIDE—SELF-DEFENSE—DUTY TO RETREAT.

Since no one may take the life of another, even in self-defense, unless there is no other escape from death or great bodily harm, it is the duty of one attacked to retreat if he can safely do so, or to use such other reasonable means as are within his power to avoid killing his assailant.

19. HOMICIDE—SELF-DEFENSE—APPREHENSION OF DANGER.

In order to justify one in killing his assailant, it is not sufficient that he at the time believed himself to be in danger of death or great bodily harm at the hands of the assailant; but the circumstances must have been such in the judgment of the jury as to justify a reasonable man in such belief.

20. HOMICIDE—SELF-DEFENSE.

One is not justified in killing another because such other is of a bad or low character, or because he has been previously assaulted or threatened by the other.

21. HOMICIDE—SELF-DEFENSE.

Neither the fact that deceased had made an assault on accused shortly before she fired the fatal shot, nor the fact that she was a woman, and of frail and weak physique, and knew deceased to be a man of violence, nor any previous threats made by him, would justify the shooting, unless she believed at the time of the shooting that she was in imminent danger of death or great bodily harm.

22. HOMICIDE—DEFENSES—ACCIDENTAL KILLING.

Under the statutes making the intentional pointing of a deadly weapon at or toward another a misdemeanor, and providing that when death results from an unlawful act, though not malicious, the one doing the killing shall be guilty of manslaughter, one accused of homicide cannot be acquitted on the ground that the shooting was accidental, if the gun was intentionally pointed at deceased.

23. CRIMINAL LAW—EVIDENCE—GOOD CHARACTER OF ACCUSED.

The good character of accused, when proved, is to be taken in connection with all other evidence, and given such weight under all the facts and circumstances as, in the judgment of the jury, it is entitled to.

24. CRIMINAL LAW—EVIDENCE—CONFLICTING EVIDENCE.

Where there is a conflict in the testimony, it is the duty of the jury to reconcile such conflict if they can, and if they cannot, to accept such testimony as they consider, under all the circumstances, most worthy of belief.

25. CRIMINAL LAW—EVIDENCE—PRESUMPTION OF INNOCENCE.

In every criminal case, accused is presumed to be innocent until his guilt is proved beyond a reasonable doubt.

26. CRIMINAL LAW—EVIDENCE—"REASONABLE DOUBT".

By "reasonable doubt" is not meant a vague, speculative, or mere possible doubt, but such a doubt as a reasonable man would entertain under all the evidence.

*(February 28, 1911.)*

PENNEWILL, C. J., and BOYCE and CONRAD, J. J., sitting.

*Josiah O. Wolcott* and *W. Watson Harrington,* Deputies Attorney General, for the state.

*Thomas C. Frame, Jr.,* and *J. Hall Anderson* for the prisoner.

Court of Oyer and Terminer, Kent County, February Term, 1911.

INDICTMENT FOR MURDER OF THE FIRST DEGREE for shooting with a shot gun one John Curry on Lockerman Street in Dover, between eleven and twelve o'clock on the night of October 12th, 1910.

The facts and questions presented appear in the rulings and charge of the court.

During the examination of the jurors, counsel for defendant objected to a certain juror for cause, on the ground that he was a member of the coroner's jury which had heard evidence and held the prisoner for the murder of John Curry. The state opposed excusing the juror because the ground urged was not a sufficient ground for challenge for cause.

PENNEWILL, C. J.:—We think it is not sufficient.

At the trial the defendant's counsel sought under the plea of self-defense to introduce evidence of previous quarrels, threats towards and assaults made upon the defendant by the deceased.

PENNEWILL, C. J.:—The Court have given the question pre-
sented as careful examination and consideration during the recess
as we were able to give it, and have reached a conclusion.    We
have found that the cases bearing upon this subject are very
numerous;—some states being much more liberal, and going further
in the admission of such testimony than others.    We think our
own state has been as conservative in this respect as any other,
and properly so.

The question before the court, is whether the defense may
show—the plea of self-defense being relied upon—previous quar-
rels, threats and assaults made upon her by the deceased.    In
order that such testimony may be admissible, it is necessary that
the deceased should have indicated by some act or demonstra-
tion at the time of the killing, a real or apparent intention to
kill, or inflict great bodily harm upon the defendant, and thereby
induce the latter to reasonably believe that it was necessary to
kill to save herself.    There must be some connection between the
previous quarrels, assaults and threats and the fatal act.    They
must have had some effect upon the mind of the defendant in the
commission of the homicide or they cannot be admissible in
evidence.

According to the admission of counsel for the defendant, the
defendant had forgiven her husband for all beatings he had
inflicted upon her prior to the night of the killing, and they had
continued to live together as man and wife.    We think, therefore,
that no threat, quarrel or assault made or committed by the
deceased previous to the time when they separated on the night of
October twelfth, could have had sufficient connection with the
shooting on that night to make it admissible.

But it is contended that only twenty or thirty minutes
before the fatal act was committed, the deceased had threatened
and beaten the defendant, and that such acts and threats having
occurred so close to the shooting, they are admissible under the
plea of self-defense.

It is insisted, however, by the state that conceding such
acts might be admissible if the deceased had at the time of the
homicide made an assault, or made some demonstration of such

Opinion—Charge.

a character as to justify a reasonable man in believing that he was in danger of death or great bodily harm at the hands of the deceased, yet in this case nothing of the kind is shown; and that, therefore, no proper ground has been laid for the introduction of the evidence offered.

The testimony of the defendant is, "that she suddenly, and unexpectedly, met the defendant upon the street in a dark place between eleven and twelve o'clock at night; that he stopped, threw his hand back and stepped toward her, and that she was scared that he would cut her with the razor, as he had it in his hand when he left the house, and had threatened to kill her before he left, and she stepped back and threw the gun up."

It must be admitted that such testimony does not furnish very strong ground for the admissibility of the evidence; it might very well be thought that nothing was done by the deceased, according to the defendant's own testimony, that could warrant a reasonable person in believing himself in danger of death or great bodily harm at the time.

But we think the evidence offered, having relation to an assault committed only twenty or thirty minutes before the fatal shot was fired, and taken in connection with the testimony of the defendant as to what the deceased did, and the effect his actions had upon her at the time she did the shooting, should be admitted for whatever the jury consider it to be worth under the circumstances.

PENNEWILL, C. J., charging the jury:

Gentlemen of the jury:—The prisoner at the bar is charged in this indictment with murder of the first degree, and under such indictment you may find her guilty in manner and form as she stands indicted, that is, of murder of the first degree, or you may find her guilty of murder of the second degree, or guilty of manslaughter, or not guilty, just as in your judgment the law and the evidence shall warrant and justify.

It is alleged that the prisoner on the night of October 12th, 1910, between the hours of eleven and twelve, at a point just west of the store of John Behen and near the intersection of New

and Lockerman Streets, in the town of Dover, with a sedate, deliberate and formed design to kill, shot John W. Curry in the side of the head with a shotgun and instantly killed him. The state claims that the deceased was, at and just before the shooting, slowly walking in company with another person along the street and towards said crossing, with his hands in his pockets, when the prisoner met him, and without a word being spoken by the deceased, or any hostile act or movement at all on his part, cocked the gun, pointed it at the deceased and shot him without any excuse or provocation.

The defendant does not deny the shooting, but contends that she committed the act in proper and necessary self-defense, claiming that a little while before the shooting she was assaulted by the deceased at their house, and threatened with death; that, fearing he might carry out his threat with his gun, she took it away from the house and was carrying it to the house of another person several blocks away, when she unexpectedly met the deceased—her husband—on the street, at a dark place; that she was but a short distance from him, when he stopped, made a step towards her and threw one hand around back of him; that she thought he was going to cut her with a razor, which she knew he had when he left the house about twenty or thirty minutes before, and she raised the gun, but did not intend to shoot, her purpose being only to scare him.

The prisoner being indicted for murder of the first degree, it becomes the duty of the court to state to you, as clearly as we are able to do, what constitutes that degree of murder, and we feel it incumbent upon us to tell you also what constitutes murder of the second degree, and manslaughter, because a statute of this state provides that: "A person indicted for murder may be found guilty of either degree of murder, or of manslaughter."

Homicide, we may say, is the killing of one human being by another. Felonious homicide is of three kinds: Murder of the first degree, murder of the second degree and manslaughter. Malice is an essential ingredient of the crime of murder of both degrees. Without malice there can be no murder either of the first or second degree. Malice is a condition of the mind or

heart. As here used this term is not restricted to spite or malevolence toward the particular person slain, but also includes that general malignity and reckless disregard of human life which proceed from a heart void of a just sense of social duty and fatally bent on mischief. Whenever the fatal act is done deliberately or without adequate cause, the law presumes that it was done with malice, and the burden is on the prisoner to show from the evidence, or by inference from the circumstances of the case, that the act was not done with malice.

Murder of the first degree is where the killing was done with express malice aforethought, or in perpetrating, or attempting to perpetrate, a crime punishable with death. Express malice aforethought is where one person kills another with a sedate, deliberate mind and formed design, which formed design, or purpose, may be shown from the circumstances attending the act, such as the deliberate selection and use of a deadly weapon, knowing it to be such, stealthily lying in wait, preconcerted plans, or the previous procurement or preparation of instruments, contrivances or other means for slaying the victim.

These, however, are but some of the instances, given for the sake of illustration, in which the external or attending circumstances will evidence the sedate, deliberate mind and formed design to kill; for whenever, in any other instance, the attending circumstances evidence such a mind and design to do the act, and death ensues, it constitutes, in law, express malice aforethought, and murder of the first degree, under the statute. Where one either from motives of hatred or revenge coolly and deliberately forms the design in his mind to kill another, and commits the act, either by lying in wait for him, or in any other manner, it is murder with express malice aforethought of the first degree.

If the jury are satisfied from the evidence that the prisoner killed the deceased with a sedate, deliberate and formed design, and intention so to do, the length of time that such design or intention existed is immaterial and the killing under such circumstances would be murder of the first degree.

Murder of the second degree is where the killing was done with implied malice; that is, where the malice is not express, as

in murder of the first degree, but is an inference or conclusion of law from the facts actually proved.   It is where there is no deliberate mind or formed design to take life, but where the killing was done without justification or excuse and without provocation, or without sufficient provocation to reduce the offense to manslaughter.   For example, where the killing was done without design and premeditation, but under the influence of a wicked and depraved heart, or with cruel and reckless disregard of human life, the law implies malice and makes the offense murder of the second degree.

Malice is implied by law from every unlawful and cruel act committed by one person against another, for the law considers that he who does an unlawful and cruel act voluntarily does it maliciously.   Where the killing is shown to have been done with a deadly weapon, that is, with a weapon likely to produce death, it is presumed to have been done maliciously.

Manslaughter is where one person unlawfully kills another without malice.   For example, when one in a sudden affray, or fight, in the heat of blood, or in a transport of passion, inflicts the mortal wound without time for reflection or for the passions to cool.

It is necessary for the court in this case to instruct you respecting the law of self-defense.

We say to you that a slight assault will not excuse or justify the killing of the assailant with a deadly weapon.

The burden of establishing self-defense to the satisfaction of the jury rests upon the accused.

In repelling or resisting an assault no more force may be used than is necessary for the purpose, and if the person assailed uses in his defense greater force than is necessary he becomes the aggressor.

If the deceased first attacked the accused, even though the attack was of such character as to create in the mind of the accused a reasonable belief that he was in danger of death or great bodily harm, it was his duty to retreat, if he could safely do so, or to use such other reasonable means as were within his power to avoid killing his assailant.

Charge.

No one may take the life of another, even in self-defense, unless there is no other available means of escape from death or great bodily harm. If one is attacked, and from the character of such attack he had reasonable cause to believe, and did believe, that he was in imminent danger of death or great bodily harm, and he had no other reasonable means of avoiding or preventing death or great bodily harm, then the killing of the deceased would be a justifiable act of self-defense.

If, on the other hand, the attack was of a trifling character and manifested no purpose or intention on the part of the assailant to inflict any serious injury, the repelling of such attack by the use of a weapon likely to produce death would not be an act of justifiable self-defense.

In ascertaining whether the accused was in danger of injury at the hands of the deceased when he struck the mortal blow; and, if in such danger, whether he took the proper precautions to avoid such danger, the jury should consider the facts and circumstances of the case as disclosed by the witnesses.

In order to justify or excuse the accused in striking the fatal blow, it is not sufficient that he at the time believed himself to be in danger of death or great bodily harm at the hands of the deceased, but the circumstances must have been such, in the judgment of the jury, as to justify a reasonable man in such belief; and, further, that there was no reasonable way of avoiding or escaping from such danger except by slaying the assailant.

And we further say that a person is not justified in taking the life of another because such other person is a bad man or of low character, or because the person making the assault has been previously assaulted or threatened by the other.

Neither the fact that the deceased had made an assault upon the prisoner shortly before she fired the fatal shot, nor the fact that she was a woman, and of frail and weak physique, and knew the deceased to be a man of violence, nor any previous threats made by him to her, would justify the shooting unless she had reasonable cause to believe, and did believe, at the time of the shooting, that she was in imminent danger of death or great bodily harm.

In determining whether such condition existed at the time, and whether the prisoner was then in imminent danger of death or great bodily harm, the jury may consider all the facts and circumstances disclosed by the evidence; including any threats or cruel treatment which you believe from evidence have been satisfactorily proved.

You cannot find the prisoner not guilty on the ground that the shooting was accidental, because a statute of this state makes the intentional pointing of a deadly weapon at or towards another a misdemeanor—a crime. The prisoner admits that she intentionally pointed the gun at the deceased, so that even if you should believe it was not her intention to discharge the weapon, and should believe that the shooting was therefore not malicious, her act was nevertheless unlawful, and, when death results from such an act, the statute makes the person committing the act guilty of manslaughter when the killing does not amount to murder.

The good character of an accused person, when proved, is to be taken in connection with all the other evidence, and is to be given such weight, under all the facts and circumstances of the case, as in the judgment of the jury it is entitled to.

Where there is conflict in the testimony it is the duty of the jury to reconcile such conflict if they can. If they cannot, they should accept such testimony as they consider under all the circumstances is most worthy of credit and belief.

You have listened very patiently and attentively to the presentation of the case, and it will soon become your duty to determine from the evidence, applying thereto the law as we have stated it, whether the prisoner is guilty or not guilty. The case is important to the prisoner and also to the people — the county and the state. It should receive from you the most careful and conscientious consideration, and we believe it will.

In every criminal case the accused is presumed to be innocent until his guilt is proved beyond reasonable doubt. If, after carefully and conscientiously considering and weighing all the evidence, you should entertain a reasonable doubt of the guilt of the prisoner, you should give her the benefit of such doubt and your verdict should be not guilty. But by reasonable doubt is not

meant a vague, speculative or mere possible doubt, but such a doubt as a reasonable and fair minded man would entertain under all the evidence.

In conclusion, we say, that if you believe the prisoner killed the deceased in necessary and lawful self-defense, as we have defined it to you, your verdict should be not guilty.

If you believe the prisoner killed the deceased unlawfully, but without malice, your verdict should be guilty of manslaughter.

If you believe the prisoner killed the deceased, not with a sedate, deliberate mind and formed design to kill, but nevertheless maliciously, without justification or excuse, or without sufficient provocation to reduce the offense to manslaughter, or if you believe the killing was done under the influence of a wicked and depraved heart, with a cruel and reckless disregard of human life, your verdict should be guilty of murder of the second degree.

If you believe the prisoner killed the deceased with express malice, that is, with a sedate, deliberate mind and formed design to kill, your verdict should be guilty in manner and form as she stands indicted—murder of the first degree.

Verdict, guilty of murder of the second degree.