STATE *vs.* THEODORE LYNCH.

1. HOMICIDE—COMMUNICATED THREATS MADE BY DECEASED AGAINST DEFENDANT ADMISSIBLE.

    In prosecution for homicide, defended on ground of self-defense, threats made by deceased against defendant and communicated to defendant are admissible as tending to show effect on defendant's mind.

2. HOMICIDE—UNCOMMUNICATED THREATS ADMISSIBLE TO SHOW WHO WAS AGGRESSOR, BUT ONLY WHERE UNCERTAINTY AS TO AGGRESSOR EXISTS.

    In prosecution for homicide, defended on ground of self-defense, uncommunicated threats made by deceased against defendant may be considered as tending to show who was the aggressor, but only where it is uncertain from evidence who began the fight.

3. HOMICIDE—DEFENDANT CANNOT TAKE LIFE OF ANOTHER, WHO WAS AGGRESSOR, UNLESS DEFENDANT BELIEVES WITH REASONABLE CAUSE THAT HE IS IN IMMINENT DANGER OF DEATH OR GREAT BODILY HARM.

    Even though deceased was the aggressor, defendant had no right to take his life unless defendant believed, and had reasonable cause to believe, that he was in imminent danger of suffering death or great bodily injury at hands of deceased.

*(February 9, 1925.)*

PENNEWILL, C. J., HARRINGTON and RICHARDS, J. J., sitting.

*Clarence A. Southerland,* Attorney-General, *James R. Morford* and *Howard J. Cooke,* Deputy Attorneys-General, for the State.

*James M. Tunnell* for defendant.

Court of Oyer and Terminer for Sussex County, February Term, 1925.

Indictment for first degree murder, No. 11, February term, 1925.

PENNEWILL, C. J., charged the jury, in part:

[1] In determining whether the prisoner was acting in self-defense, the jury may consider any threats made by the deceased against the defendant and known to the defendant before the cutting, as tending to show that such threats were operating on the mind of the defendant and causing him to fear the deceased, and apprehend injury at the time of the combat.

[2, 3] And threats made by the deceased against the defendant, that were unknown to the defendant, may be considered

by the jury as tending to show who was the aggressor; that is, who began the fight. But such uncommunicated threats should not be considered unless it is uncertain from the evidence who began the fight. And, even though you believe the deceased began the fight, and was the aggressor, the defendant had no right, because of that fact, to take the life of the deceased unless the defendant at the time believed, and had reasonable cause to believe, that he was in imminent danger of suffering death or great bodily harm at the hands of the deceased.

NOTE BY REPORTER.—In the following cases the courts of this state have considered the admissibility of evidence of the reputation of the deceased for violence in homicide cases, or of the injured person in cases of aggravated assaults:

In *State v. Thawley*, 4 *Harr.* 562, though self-defense was relied on, evidence that deceased was a violent man, and in the habit of attacking others, was rejected on the ground that his character was not in issue. Harrington, J., however, expressed a doubt as to the correctness of the decision. In *State v. Wiggins*, 7 *Penn.* 128, 76 *Atl.* 632, *State v. Short*, 2 *Boyce* 491, 82 *Atl.* 239, and *State v. Faino*, 1 *Marv.* 492, 41 *Atl.* 134, evidence of reputation of the deceased for violence, when such reputation was known to the defendant, and self-defense was relied on, was admitted, and in *State v. Lee*, 1 *Boyce* 18, 74 *Atl.* 4, evidence of the reputation of the prosecuting witness for violence, when known to the defendant, was held admissible in a prosecution for assault with intent to commit murder.

To the same effect as the more recent Delaware cases, see *Jones on Ev.* (*Blue Book*) § 156; *Wigmore on Ev.* § 246.

The following cases in this state have considered the admissibility of evidence of prior threats made against the defendant by the deceased person in homicide cases:

In *State v. Warren*, 1 *Marv.* 489, 41 *Atl.* 190, though self-defense was relied on by the defendant, uncommunicated threats were rejected because they could have no effect on the defendant. In *State v. Powell*, 5 *Penn.* 24, 61 *Atl.* 966, however, where there was a question as to whether the defendant or the deceased person

was the aggressor, and self-defense was, therefore, an issue, threats, though uncommunicated to the defendant, were held to be admissible as tending to show the feeling of the deceased toward the defendant, and, therefore, having some bearing on who began the affray.    In *State v. Harmon*, 5 *Boyce* 296, 92 *Atl.* 853, self-defense was an issue in the case, but the court said:

"In determining whether the prisoner was acting in self-defense  *  *  * you may consider any threats  *  *  *  made by Rickits [the deceased], against the prisoner and known to the prisoner before the cutting.  But you should not consider any threats that were not communicated to the prisoner before he did the cutting, because threats are admissible in evidence only on the theory that they were operating upon the mind of the prisoner and causing him to fear the deceased and apprehend injury from him at the time the prisoner used his knife."

*State v. Powell* apparently was not called to the attention of the court.    In *State v. Reese*, 2 *Boyce* 434, 79 *Atl.* 217, self-defense was relied on and the defendant was permitted to show prior acts of violence by the deceased toward the defendant shortly before the shooting.

In *State v. Short*, 2 *Boyce* 491, 82 *Atl.* 239, where self-defense was relied on by the defense, evidence of specific acts of violence on the part of the deceased toward third persons, though known to the defendant, was held inadmissible.

See, also, as to the admissibility of both communicated and uncommunicated threats, *Jones on Ev.* (*Blue Book*) § 146; *Wigmore on Ev.* §§ 110, 111, and 247; *State v. Walter L. Long, infra.*

Verdict: Guilty of murder in the second degree.