SCHIMMEL and wife, Respondents, vs. DUNDON and wife, Appellants.*

*April 12—May 7, 1957.*

* Motion for rehearing denied, with $25 costs, on June 26, 1957.

100

For the appellants there were briefs by *Kenneth K. Port* of Wauwatosa, attorney, and *Frederick & Mantyh* of Milwaukee of counsel, and oral argument by *Mr. Port* and *Mr. William J. Mantyh.*

For the respondents there was a brief by *R. J. Schimmel,* attorney, and *Arthur J. Schmid* and *Arthur J. Schmid, Jr.,* of counsel, all of Milwaukee, and oral argument by *Mr. Schimmel* and *Mr. Schmid, Jr.*

WINGERT, J. We are obliged to reverse the judgment because of plaintiffs' failure to establish their own title to the disputed strip of land.

The action is one to quiet title, and therefore plaintiffs must prove that they have title to the tract in suit. They cannot prevail on the mere weakness of defendants' title. *State v. Gether Co.* 203 Wis. 311, 315, 234 N. W. 331; *Kidder v. Pueschner,* 211 Wis. 19, 22, 247 N. W. 315.

Defendants' deed was recorded long before either the Kranzes or plaintiffs purchased the other lot. Therefore both Kranzes and plaintiffs were conclusively charged with

knowledge of defendants' deed and of the description contained therein, and they took subject to the legal effect of that deed. *Kidder v. Pueschner,* 211 Wis. 19, 21, 247 N. W. 315.

The only evidence in the record as to the circumstances of the sale of parcel A to Kranz is the testimony of Siepmann that he, not Lutz, handled that transaction, and that—

"*A.* Well, at that time Mr. Kranz was drilling a number of wells for us, and one time I asked him if he would buy a few pieces of land and hold them for a while instead of me paying cash for the wells. I drove around a couple subdivisions, I pointed to the land from my car, that is the way Mr. Kranz bought them just trusting me that I was giving him something I could.

"*Q.* Were they sold by metes and bounds or stakes? *A.* It was later described by metes and bounds, when he was in the car, I pointed to what we had to market.

"*Q.* Was that stake up? *A.* I am sure it was, it had to be."

This testimony falls far short of showing an intention on the part of Kranz, let alone Mrs. Kranz, to buy to the stake line, or that the description in the deed was the result of a mutual mistake; particularly since Kranz was on notice that defendants' deed covered parcel B plus 15 feet. The trial court's finding that Siepmanns sold to Kranzes a parcel "as surveyed and staked and described as parcel #22A above" if construed to mean that all parties intended conveyance of the tract to the stake line, is without support in the evidence. There is no evidence that either of the Kranzes ever supposed that they owned the 15-foot strip.

Plaintiffs bought from the Kranzes, and obtained only what they owned. While Lutz testified that he sold lot 22A to plaintiffs by stake description, and plaintiff testified that Lutz pointed out the stakes on all four corners, there is no

showing that Lutz had actual or apparent authority from Kranz to sell the Kranz property as including the 15-foot strip. There is no evidence that Mr. and Mrs. Kranz intended to convey anything other than the tract described by metes and bounds in their deed, nor that the identical description in plaintiffs' deed from Mr. and Mrs. Kranz represented any mistake on the grantors' part.

It must be concluded therefore, that plaintiffs obtained only the property described in their deed, which was the same as that described in the deed from Siepmann to Kranz, and does not include the disputed strip.

*Thiel v. Damrau,* 268 Wis. 76, 66 N. W. (2d) 747, does not permit a different conclusion. There both grantees from the common grantor bought with the mutual intention that the stakes marked the common boundary line, and their deeds conveyed by lot numbers only, and not by metes and bounds. In the present case there is no evidence that the Kranzes intended to buy or sell anything other than the tract described in their deed.

It remains only to consider whether plaintiffs obtained title to or, any enforceable right in, the 15-foot strip by virtue of their dealings with defendants.

Both parties believed the stake line was their line, defendants so stated to plaintiffs, and defendants built a fence on the stake line and permitted plaintiffs to cultivate the 15-foot strip. This state of affairs lasted only four years, however, and falls far short of the period necessary to create rights by adverse possession or prescription. Even if the defendants had been the owners of the 15-foot strip, their mere acquiescence for less than twenty years in a fence mutually believed to be on the boundary line would not bar them from insisting on the true boundary, where as here there is no evidence of any dispute or disagreement as to the location of the line which the fence was erected to settle. *Peters v. Reichenbach,* 114 Wis. 209, 216, 90 N. W. 184.

Neither are the defendants estopped from asserting plaintiffs' want of title to the 15-foot strip.

"Where there is an agreement or acquiescence in a wrong boundary, when the true boundary can be ascertained from the deed, it is treated both in law and equity as a *mistake,* and neither party is estopped from claiming to the true line." *Hartung v. Witte,* 59 Wis. 285, 299, 18 N. W. 175; *Lake Geneva Beach Asso. v. Anderson,* 246 Wis. 596, 602, 18 N. W. (2d) 493.

Moreover, the only action taken by plaintiffs in reliance on defendants' statements about the boundary was the cultivation of a garden on the strip and the planting of some bushes and vines. There is no showing that this was detrimental to plaintiffs. Estoppel requires change of position to the party's prejudice. *Wisconsin Telephone Co. v. Lehmann,* 274 Wis. 331, 335, 80 N. W. (2d) 267.

In view of our disposition of the case, we need not consider the propriety of entertaining an action to quiet title based on deeds mistakenly omitting the land in dispute, without first or simultaneously reforming the deeds to correct the description. See *Lange v. Andrus,* ante, p. 13, 83 N. W. (2d) 140. Obviously the necessary parties to any reformation were not before the court.

*By the Court.*—Judgment reversed, with directions to dismiss the complaint.

FAIRCHILD, J. (*dissenting*). Mr. and Mrs. Schimmel and Mr. and Mrs. Dundon are the four parties to this action. They, and they alone, lay any claim to the tract which Mr. Siepmann chose to call "Clasen Farm." The dispute between these neighbors concerns the location of the boundary which divides that tract between them. The true location of that boundary is important to these four people. Each one of them knew that the boundary of the division intended by Mr. Siepmann lay along a line marked by stakes and each of

them accepted that boundary when they bought their land. The difficulty arose when the Dundons, who had been good neighbors and had been perfectly satisfied for four years with the boundary marked by stakes, discovered that by error the description in the deeds gave them 15 feet more than they had ever supposed they owned. They decided to take advantage of something on paper which they knew they had not bought or paid for and their neighbors had.

We would need to be highly imaginative to suppose that there is anyone really interested in the subject matter of this lawsuit except the Schimmels and the Dundons. The case has been tried on its merits and the circuit court has rendered a judgment which draws the boundary between them in accordance with the understanding each had when he purchased. Except for the minor matter of damages for the trespass, the judgment is amply supported by the evidence.

Forms of action and theories of pleading should not stand in the way of a just result when the parties have all had their day in court on the merits of their dispute.

In my opinion the judgment of the circuit court in so far as it determines the boundary should be affirmed.

The following memorandum was filed June 26, 1957:

PER CURIAM (*on motion for rehearing*). The motion for rehearing is denied with $25 costs. The mandate is amended to read:

"Judgment reversed, with directions to dismiss the complaint without prejudice."